IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

TODD W. BOYES,

      Plaintiff,

v.                                        Case No. 2:20-cv-00108

JOHN YOUNG, JOHN FRAME,
DONALD AMES, BETSY JIVIDEN,
JARROD WILSON, and CURTIS DIXON,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDATION**

This matter is assigned to the Honorable John T. Copenhaver, Jr., Senior United

States District Judge, and it is referred to the undersigned United States Magistrate Judge

for submission of proposed findings and a recommendation for disposition, pursuant to

28 U.S.C. § 636(b)(1)(B).  Pending before the court is Defendants' Motion for Summary

Judgment (ECF No. 110), which is fully briefed and ripe for resolution.

*I.     RELEVANT PROCEDURAL HISTORY*

This matter is proceeding on Plaintiff's Amended Complaint (ECF Nos. 14, 91, and

92).   The Amended Complaint alleges violations of Plaintiff's First, Eighth, and

Fourteenth Amendment rights arising out of a prison disciplinary proceeding in which

Plaintiff was found guilty of possession of a cellular phone.[1]  Following an extended period

---

[1] By Order and Notice entered on June 16, 2021, the undersigned summarized a telephonic status
conference conducted with the parties that same date.  (ECF No. 90).  The undersigned granted Plaintiff's
motions for leave to amend his complaint only to the extent that he was permitted to add allegations
identifying Jarrod Wilson as the "John Doe" correctional hearing officer who presided over the subject
disciplinary hearing and clarifying that Defendant Dixon's first name is Curtis.  (ECF No. 90 at 3-4; ECF
Nos. 91, and 92).  As further addressed in the Order and Notice, during the status conference, the

for discovery, on October 13, 2021, Defendants filed the instant Motion for Summary Judgment (ECF No. 110). Pursuant to the holding in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of his right and obligation to respond to any summary judgment motion filed by Defendants and concerning the evidence and materials upon which he could rely to rebut Defendants' evidence, as provided in Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 34). On February 22, 2022, Plaintiff responded to the motion for summary judgment. (ECF No. 128).[2] On February 28, 2022, Defendants filed a reply brief. (ECF No. 130). This matter is ripe for adjudication.

## II.    STATEMENT OF FACTS

It is undisputed that, on September 30, 2019, a cell phone and other accessories were discovered hidden inside a cooler in the cell Plaintiff shared with inmate Bret Vance ("Vance") at the Mount Olive Correctional Complex ("MOCC"), a West Virginia Division

---

undersigned denied Plaintiff leave to amend his complaint to include allegations concerning his placement in administrative segregation at the conclusion of his 60-day term of punitive segregation, the constitutionality of the "Quality of Life" program required to be completed by administratively segregated inmates, and the conditions of confinement on the segregation unit recreation yard, which he contends caused him to contract Covid-19. (ECF No. 90 at 4, denying further amendments as stated in ECF Nos. 56-1, 74, 87-1, and 88).

Plaintiff subsequently filed a separate complaint which substantially overlapped with the current complaint and contained additional allegations concerning the administrative segregation process and the conditions of the recreation yard. *See Boyes v. Young*, Case No. 2:21-cv-00483 (S.D.W. Va.) (Copenhaver, S.J.). The undersigned conducted another status conference on February 2, 2022. During that hearing, the undersigned clarified that the scope of the instant case would concern Plaintiff's First, Eighth, and Fourteenth Amendment claims surrounding the disciplinary violation investigation and hearing and the 60-day sanctions imposed, while Case No. 2:21-cv-483 would address Plaintiff's First, Eighth, and Fourteenth Amendment claims concerning his alleged retaliatory placement in indefinite administrative segregation and the conditions of the segregation unit recreation yard. (ECF No. 127). However, Plaintiff subsequently voluntarily dismissed the second case. *See* Case No. 2:21-cv-00483, ECF Nos. 10 & 11. Thus, Plaintiff's claims surrounding his placement in administrative segregation and the conditions of the recreation yard were dismissed without prejudice on February 23, 2022 and are not currently pending in either matter.

[2] To the extent that Plaintiff's response and exhibits contained address the issues of administrative segregation and the condition of the segregation recreation yard, the undersigned will disregard those arguments and evidence. Should Plaintiff still seek to pursue those claims, he must do so in a new civil action within the applicable statute of limitations period.

of Corrections and Rehabilitation ("WVDCR") facility located in Mount Olive, West Virginia.  (ECF No. 110, Ex. 2).  In accordance with WVDCR/MOCC Policy Directive 325.00, Plaintiff and Vance were placed in segregation pending further investigation and a disciplinary hearing.  (ECF No. 110, Ex. 1 at 1; Ex. 2; ECF No. 128, Exs. 9 and 10).

According to an incident report prepared by Defendant John Young ("Young"), on October 1, 2019, Plaintiff was interviewed by Young and Defendant Curtis Dixon ("Dixon"), who serve as institutional investigators at MOCC.  When asked if he had ever possessed the cell phone, Plaintiff responded "I'm not a rat and I'm not saying anything." (ECF No. 110, Ex. 2).  Dixon and Young then showed Plaintiff a picture of Vance taken by someone else in their prison cell that had been sent by text message from the phone.  (ECF No. 110, Exs. 2 and 3; ECF No. 128, Ex. 1).  When asked if he had taken the picture, Plaintiff stated, "I'm not saying anything, but there's your answer."  (ECF No. 110 Ex. 2; ECF No. 128, Ex. 1).  Thereafter, Plaintiff was charged with a violation of Policy Directive 325.00, rule 1.18, Violation of State Law, grounded in a violation of West Virginia Code § 61-5-8 and was advised of his rights surrounding the disciplinary hearing scheduled on October 7, 2019.  (ECF No. 110, Ex. 1 at 2; Ex. 2; Ex. 4).

Plaintiff claims that, at the time of the search and his subsequent interview, the investigators had already interviewed MOCC food service staff member, Brittany Fitzwater ("Fitzwater"), who admitted that she was in a relationship with Vance and had brought the cell phone into the prison so she could communicate with Vance.  (ECF No. 128 at 1-2).  Fitzwater allegedly provided several text messages between herself and Vance to the investigators, including the one with the picture of Vance.  (*Id*. at 2).  Thus, Plaintiff contends that the investigators were "fully aware of who owned the cell phone and how it came to be in the prison."  (*Id*. at 2).  Plaintiff further claims that he was never implicated

3

by Vance or Fitzwater.  (*Id.* at 2 and Exs. 2, 11, and 12).  Nonetheless, Plaintiff claims that Dixon and Young threatened to place him in segregation for two years and charge him with a felony if he did not become a "rat" and inform for them, which he refused to do. (ECF No. 14 at 2; ECF No. 43 at 1-2 and Ex. 1; ECF No. 48. Ex. 1; ECF No. 61 at 1).  Dixon and Young deny threatening Plaintiff with placement into a segregation unit, or any other retaliatory action, if he did not give them information about the cell phone or inform on Vance.  (ECF No. 48, Exs. 2 and 3).[3]

Plaintiff was served with a copy of the detailed "Disciplinary Incident Report" on October 1, 2019, and was notified that a hearing would be held on the charges against him on October 7, 2019.  (ECF No. 110, Ex. 4; ECF No. 128, Ex. 1).  A disciplinary hearing was held on or about October 9, 2019, at which Plaintiff was represented by inmate representative Daniel Wayne Collins.  (ECF No. 110, Ex. 5; ECF No. 128, Ex. 2).  During the hearing, Young's incident report was read into the record and Young was present to attest thereto and answer any questions.  Vance also testified that the cell phone was his and that Plaintiff knew nothing about it.  Plaintiff had an opportunity to testify, but refused to do so.  (ECF No. 14 at 2; ECF No. 48, Ex. 2; ECF No. 61 at 1; ECF No. 110, Ex. 5).

Based upon the incident report, the photograph of Vance, and Plaintiff's own statements to the investigators, the hearing officer, Defendant Jarrod Wilson ("Wilson"), found Plaintiff guilty and sanctioned him with 60 days in segregation and a loss of privileges, except for access to library books, for 60 days.  (ECF No. 110, Ex. 5).  Plaintiff

---

[3] The parties previously submitted declarations and affidavits made under penalty of perjury with their respective filings in ECF Nos. 43, 48, and 61 offered in support of or opposition to Plaintiff's prior Motion for Partial Summary Judgment, which was denied.  Because that sworn evidence is part of the record before the Court, the undersigned considers such sworn evidence here, despite the fact that the parties did not resubmit the same with their present filings related to Defendants' Motion for Summary Judgment.

did not lose any good conduct time.  Plaintiff was provided with Wilson's written findings concerning his decision, which were upheld on appeal by Defendants Donald Ames ("Ames"), the Superintendent of MOCC, and Betsy Jividen ("Jividen"), the Commissioner of the WVDCR.  (ECF No. 61 at 1; ECF No. 110, Exs. 5-8; ECF No. 128, Exs. 2 and 3).  Ames upheld the decision, finding that "there was substantial compliance with institutional standards and procedures relating to the violation."  (ECF No. 110, Ex. 6; ECF No. 128, Ex. 3).  He further found that Wilson's decision "was based on sufficient evidence" and that the "sanction imposed was proportionate to the rule violation." (*Id.*)  Ames advised Plaintiff of his right to appeal to the Commissioner and the time frame for doing so.  (*Id.*) Thereafter, the decision was affirmed by Jividen's office.  (ECF No. 110, Ex. 7; ECF No. 128, Ex. 3).

Plaintiff claims that his Fourteenth Amendment due process rights were violated by the disciplinary proceedings.  He also alleges that his First Amendment rights were violated by Dixon and Young's alleged threat to keep him in segregation and charge him with a felony if he did not become an informant for them.  Finally, Plaintiff claims that the highly restrictive conditions in the segregation units have resulted in severe isolation that has caused him physical and psychological harm in violation of the Eighth Amendment.

On October 13, 2021, Defendants filed the instant Motion for Summary Judgment (ECF No. 110), with accompanying exhibits, and a Memorandum of Law in support thereof (ECF No. 111), asserting that each of Plaintiff's claims for relief fails as a matter of law and that Defendants are entitled to qualified immunity and judgment thereon.  On February 22, 2022, in accordance with the undersigned's orders, Plaintiff filed a response to Defendants' motion and included numerous exhibits of his own.  (ECF No. 128).  On

February 28, 2022, Defendants filed a reply brief largely reiterating their arguments from their initial brief and emphasizing that much of Plaintiff's response and exhibits pertain to claims or issues that were disallowed in this civil action.  (ECF No. 130).  This matter is ready for resolution.

### III.    STANDARDS OF REVIEW

**A.    Summary judgment standard under Fed. R. Civ. P. 56.**

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Strothers v. City of Laurel*, 895 F.3d 317, 326 (4th Cir. 2018).  Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim.  *Id.* at 325.

Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial.  *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) ("The burden is on the nonmoving party to show that there is a

genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence' . . . ."). "A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." *Brown v. Showboat Atlantic City Propoco, LLC*, No. 08-5145, 2010 WL 5237855, *2 (D.N.J. Dec. 16, 2010) (citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, "the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Id.* (citing *Anderson*, 477 U.S. at 256-57).

A court must not resolve disputed facts or weigh the evidence and may not make determinations of credibility. *Russell v. Microdyne Corp., 65 F .3d* 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013)); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir. 1979). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.,* 84 F. Supp.2d 751 (N.D.W. Va. 2000). Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 247-48. "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018)

(alteration and internal quotation marks omitted).

### B.   Qualified immunity standards.

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. (ECF No. 111 at 6-8).  Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The qualified immunity doctrine affords "'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law'" and it "insulates them from 'bad guesses in gray areas.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Marciello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

A clearly established right should not be defined broadly or "at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), and is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  The Supreme Court has confirmed that "a case directly on point [is not required], but existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.  Therefore, when confronted with a claim of qualified immunity, a court must ask the following question: "Taken in the light most favorable to the party asserting the injury, do the [specific] facts alleged show the officer's conduct violated a [clearly-established] constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

*IV.    DISCUSSION*

**A.    The WVDCR was previously dismissed as a defendant herein.**

Among other arguments, Defendants' motion for summary judgment asserts that the WVDCR is not a suable entity under 42 U.S.C. § 1983.  (ECF No. 111 at 20-21).  However, the presiding District Judge previously dismissed the WVDCR as a defendant herein on that basis.  (ECF No. 32).  Accordingly, it is unnecessary for the Court to further address that issue and the undersigned will disregard that portion of Defendants' motion.

**B.    The amended complaint fails to state a plausible claim against Defendant Frame.**

Plaintiff has also named John Frame ("Frame") as a defendant in the caption of the amended complaint.  However, as noted by Defendants' memorandum, the body of the complaint documents contain no factual allegations whatsoever concerning any conduct by Frame.  (ECF No. 111 at 5).  "[A] plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to liberally construe such complaints.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).  Nonetheless, this liberal construction requirement does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

"The liberal construction requirement [afforded to *pro se* litigants] will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law." *Adams-Bey v. Rogers*, No. 3:17-cv-210-FDW, 2018 WL 1413196, *3 (W.D.N.C. Mar. 21, 2018) (*citing Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990)). Thus, a *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). Quite simply, "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225 (2004).

Even under a liberal construction, the dearth of allegations against Frame in the amended complaint warrants his dismissal under the dictates of *Twombly* and *Iqbal*. Moreover, Plaintiff has failed to demonstrate any actual evidence supporting any federal constitutional claim against Frame. Thus, alternatively, there is no genuine issue of material fact and Frame is entitled to judgment as a matter of law on Plaintiff's claims.

## C. Defendants are entitled to judgment as a matter of law on Plaintiff's due process claims.

Plaintiff generally contends that Defendants violated his due process rights, presumably under the Fourteenth Amendment to the United States Constitution. (ECF No. 14 at 4). In his amendments to the complaint, he specifies that Defendant Wilson denied him due process because he found him guilty of the rule infraction without a meaningful explanation. (ECF Nos. 91 and 92).

To assert a valid due process claim, Plaintiff must first establish that he has a protected liberty or property interest that has been infringed.  U.S. CONST. amend. XIV, § 1.  Here, Plaintiff has not alleged any property interest that has been implicated and, because he did not lose any good conduct time because of this disciplinary proceeding, to establish a protected liberty interest he must demonstrate that his conditions of confinement in segregation constitute an "atypical and significant hardship in relation to the ordinary incidents of prison life."  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation that would give rise to a protected liberty interest); *Thorpe v. Clarke*, 37 F.4th 926, 942 (4th Cir. 2022) ("In our Circuit, prisoners retain a liberty interest in avoiding confinement conditions that impose 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' provided they can first establish that interest "arise[s] from state policies or regulations.") (quoting *Incumaa v. Stirling*, 791 F.3d 517, 526-27 (4th Cir. 2015) and *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015)).

Presuming that Plaintiff could make such a showing, the Supreme Court has clearly established the procedural requirements to satisfy due process with respect to prison disciplinary proceedings which, because they are not part of a criminal prosecution, do not entitle an inmate to the "full panoply of rights due a [criminal] defendant."  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  Instead, an inmate must only receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).  Additionally,

a hearing officer is considered impartial unless he or she has "a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role," in the circumstances underlying the charge. *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974); *Mitchell v. Maynard*, 80 F.3d 1433, 1446 (10th Cir. 1996); *Butts v. Clarke*, No. 2:12-cv-210, 2013 WL 6408357, at *9 (E.D. Va. Dec. 6, 2013) (citing *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996) (finding that without more, an institutional hearing officer's determination of credibility or lack thereof, is not evidence of bias).

Moreover, *Wolff* "did not require either judicial review or a specified quantum of evidence to support the factfinder's decision." *Hill*, 472 U.S. at 454. Rather, the Supreme Court held that due process is satisfied if "the findings of the prison disciplinary board are supported by *some evidence* in the record." *Id.* (emphasis added); *see also Brown*, 938 F. Supp. at 345 ("so long as the decision of the hearing officer (and the decisions of the officers reviewing the conviction on appeal) is based on some evidence in the record, the federal court will not inquire further into the validity of that decision."). In other words, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." *Id.* at 456. In determining whether this standard is satisfied, a court is not required to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. *Id.* at 455. The relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the arbiter. *Id.*

Even if the court accepts, for the purpose of the instant motion, that Plaintiff's conditions of confinement by being placed in segregation are so onerous as to constitute an "atypical and significant hardship" as compared to those of ordinary prison life, such

that he can establish a protected liberty interest, Plaintiff has not demonstrated as a matter of law that he was denied due process through the subject disciplinary proceeding that led to his placement in punitive segregation.

With respect to Plaintiff's Fourteenth Amendment due process claim, Defendants' motion documents assert as follows:

> While not clear, Plaintiff's due process claim against Defendant Dixon is simply that he was present during the investigative interview, nothing more.  Likewise, the due process claim against Defendant Young is limited to his part in the interview of Plaintiff and his testimony reading from his report during the disciplinary hearing. Their conduct clearly was limited to discretionary actions required by their jobs as investigators. These claims are insufficient as a matter of law, especially as the record shows Plaintiff received greater due process related to his disciplinary hearing then required by federal law. Judgment for Defendants Dixon and Young on the due process claim is proper.

(ECF No. 111 at 11).

Defendants further assert that Wilson is entitled to qualified immunity and judgment as a matter of law "because his actions are limited to discretionary, quasi-judicial functions made related to the hearing, and the decision reached." (*Id*. at 9) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 206-07 (1985) (holding prison disciplinary hearing officers are entitled to qualified immunity for their quasi-judicial functions).  Defendants assert that, "[i]n order to prevail in a deprivation of due process claim, [Plaintiff] must show a level of bias that made 'fair judgment impossible.'" *Cleavinger*, 474 U.S. at 207 (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). (*Id*.)

Finally, with respect to Ames and Jividen, Defendants' motion documents assert:

> [V]iolations of appeal procedures (if proven) state at most a violation of state law and do not implicate federal due process rights. *Brown v. Angelone*, 938 F. [sic] Supp. 340, 345 (W.D. Va. 1996); *Chambers v. Wilson*, No. 1:15-cv-00646-AJT-TCB, 2016 U.S. Dist. LEXIS 23454 (E.D. Va. filed

Feb. 24, 2016; entered Feb. 25, 2016) ("a prisoner has no federal due process rights in the appeal process"). [Footnote omitted]. Similarly, claims based upon deficiencies in a prison grievance procedure are not cognizable under § 1983 because "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.["] *See Adams v. Dodson*, 863 F. Supp[.] 284, 285 (W.D. Va. 1994). The Court in [*Wolff*] was clear there is no mandate that prison officials provide inmates an opportunity to appeal disciplinary hearing findings. *See Wolff*, 418 U.S. at 565 (declining to hold that the omission of prison appeal procedures in the challenged prison regulations violated due process); S*ee also Johnson v. Goord*, 487 F. Supp. 2d 377, 386 (S.D.N.Y. 2007) (finding no case law "establishing that the availability of an administrative appeal of a disciplinary ruling is required by due process").

(*Id.* at 11-12). Their brief further asserts:

> The record is clear that the due process provided Plaintiff met, or exceeded, the legal framework announced in [*Wolff*] applied to 14th Amendment claims. Plaintiff was interviewed about the rule violation, was provided written notice of the claimed rule violation (on October 7 [sic], 2019), and a hearing was held on October 9, 2019. The testimony offered by Defendant Young during the hearing was identical to the facts stated in his initial incident report. During the hearing, Plaintiff was given the chance to call witnesses, present evidence, and ask questions of Defendant Young. Plaintiff presented no evidence and called only one witnesses (inmate Vance). Plaintiff did not testify on his own behalf. At the conclusion of the hearing, Magistrate Wilson advised Plaintiff, on the record, that if he was found guilty of the rule violation, he had the right to appeal the decision first to the Superintendent, and second to the Commissioner of the West Virginia Division of Corrections. The law is clear that Magistrate Wilson may weigh the credibility of the witnesses in reaching his decision.
>
> On October 9, 2019, Plaintiff was provided a copy of the "Hearing Report" summarizing the evidence supporting a finding of guilt. [See Exhibit 5]. Plaintiff clearly understood and took advantage of his appeal rights as the guilty verdict was reviewed, at Plaintiff's request, by the Superintendent and later by the Commissioner. No evidence has been developed that Magistrate Wilson failed to meet the definition of an "impartial factfinder."

(*Id.* at 10).

Plaintiff has not rebutted these assertions and, further, he does not appear to be making a true procedural challenge to his disciplinary proceedings. Rather, he merely

appears to be challenging the sufficiency and veracity of the evidence against him and the substance of Wilson's decision and Ames' and Jividen's agreement therewith. As noted above, it is not the role of this court to weigh the credibility of the hearing officer's decision if it is supported by *any* evidence that could support the hearing officer's conclusion. *See Hill*, 472 U.S. at 456 ("The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.") That standard is met by the evidence of record herein.

Plaintiff's response asserts that he was found guilty despite Vance's testimony that he was solely in possession of the cell phone and Fitzwater's admission that she gave the phone to Vance. (ECF No. 128 at 6). Plaintiff maintains that he had no knowledge of the phone and that "it was never in his possession at any time." (*Id.*) Plaintiff further contends that "[t]he only implications being made concerning Plaintiff came directly from the Defendants and their belief that Plaintiff is aware of activities at the prison facility." (*Id.*) However, Plaintiff ignores the fact that Wilson found him guilty based upon the picture of Vance taken in their cell and Plaintiff's own statement, referenced in the incident report, in which he said "there's your evidence" when asked if he had taken the picture. (ECF No. 110, Ex. 2 and 5; ECF No. 128, Ex. 1 and 2).

Without any further specific argument or explanation, Plaintiff's response makes a blanket assertion that he "was not afforded the due process dictated in *Crain v. Bordenkircher*, the controlling Supreme Court precedent from the West Virginia Supreme Court." (ECF No. 128 at 4). However, the state-law *Crain* requirements, which are not applicable under § 1983, largely mirror those of *Wolff*, which were clearly satisfied

in this case.  Plaintiff's response otherwise fails to address in any detail his due process claims surrounding the disciplinary proceedings.[4]

Taking the evidence of record in the light most favorable to Plaintiff, as the court must under Rule 56, Plaintiff was timely provided with the required notice of the charge against him and an opportunity to present his own witnesses and evidence at a hearing with the assistance of an inmate representative.  It is undisputed that the hearing officer, Wilson, was not directly involved in the events giving rise to the disciplinary charges or the investigation thereof, and there is no evidence in the record that would demonstrate that he was not a neutral factfinder or that Plaintiff was denied any required process due to him.

Additionally, Wilson made written findings indicating that he found Plaintiff guilty based upon his own statements to the investigators and the facts presented in Defendant Young's incident report, which ultimately could satisfy the substantive requirement of some evidence to support the finding of guilt.  Plaintiff was provided with the written findings and was advised of his right to appeal, of which he took full advantage.  Moreover, the evidence presented at Plaintiff's disciplinary hearing upon which Wilson relied was sufficient to satisfy the lenient evidentiary standard to satisfy due process requirements.

Based upon the undisputed evidence of record, Plaintiff has failed to establish a violation of his Fourteenth Amendment due process rights by any of these Defendants. Accordingly, there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment due process claims.

---

[4] The bulk of Plaintiff's response focuses on the conditions of his confinement in segregation, particularly his indefinite placement on administrative segregation which, as noted above, has been determined to not be part of this civil action.

### D.   Defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment claims.

Defendants' motion further asserts that they are entitled to qualified immunity and judgment as a matter of law on Plaintiff's First Amendment claims, which the undersigned believes to be directed only at Defendants Dixon and Young. Defendants contend that, to the extent Plaintiff is alleging that Dixon and Young misused their power as investigators to retaliate against Plaintiff for exercising his First Amendment rights, Plaintiff has failed to offer evidence demonstrating such a claim. Their brief states:

> The only action taken against the Plaintiff during the investigation was to move him to segregation, which was required by MOCC policy. If Plaintiff's evidence cannot prove a constitutional violation, no further inquiry is necessary as qualified immunity bars the claim. *Id.* In this case, Plaintiff has no evidence that he was denied a chance to petition the government via a grievance procedure. In fact, it is clear Plaintiff was permitted to file two appeals, and the due process provided exceeded the requirements under the 14th Amendment.

(ECF No. 111 at 13-14). Thus, they assert that Plaintiff has not come forward with evidence on which a jury could find a violation of the First Amendment. (*Id.* at 13). Their reply brief further notes that, to state a colorable First Amendment retaliation claim, Plaintiff must present evidence that "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." *See Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977); *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)). (ECF No. 130 at 8).

Defendants further assert that "the Fourth Circuit has used a burden-shifting framework under which a plaintiff establishes a prima facie case of retaliation and then defendant may defeat the claim by proving he would have taken the same action in the absence of the protected conduct." *Id.* at 299. Their reply further contends:

> Plaintiff's evidentiary burden is to establish record evidence that the actions of Young and Dixon would deter a person of ordinary firmness from pursuing First Amendment activity.  Strong evidence that Plaintiff was not deterred is the fact that he promptly filed an appeal of the disciplinary hearing findings to Superintendent Donald Ames, and subsequently to Commissioner Betsy Jividen.  Also, relevant is his prosecution of this civil action which shows he was not deterred and has felt free to assert his First Amendment rights.

(*Id.* at 3).  Defendants further assert that "[t]he sole purpose of their jobs is to interview witnesses, collect evidence, and then testify (when necessary) at an inmate's disciplinary hearing" and that "the record is clear that Defendants Dixon and Young would have taken the same action . . . ."  (*Id.* at 9).  Accordingly, they maintain that "[n]o evidence has been presented that either Defendant Young or Defendant Dixon acted out of retaliation against Plaintiff, or that Plaintiff's First Amendment rights were in fact violated due to an adverse action by Defendants" and, thus, they are entitled to qualified immunity and judgment as a matter of law on this claim.  (*Id.* at 9-10).

Plaintiff's response, however, asserts that this claim is grounded in an alleged First Amendment right "not to snitch."  (ECF No. 128 at 2).  His response claims that "[a]fter refusing to provide information to Investigators, the Defendants then threatened Plaintiff by stating he would be placed in solitary isolated segregation for two years" and that he has remained in segregation for more than 25 months.  (*Id.*)

In support of this claim, Plaintiff cites to the Second Circuit's decision in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018).  In *Burns*, the Court, as a matter of first impression, found a violation of the First Amendment related to an inmate's placement in restricted custody after the inmate refused to serve as a prison informant.  However, the Court further granted qualified immunity to the defendants therein because no prior

decisions of the Supreme Court or circuit courts had recognized such a right and, thus, it was not clearly established. *Id.* at 94-95.

Likewise, here, neither the Supreme Court nor the Fourth Circuit have clearly recognized this right under the First Amendment such that Defendants would have had reasonable notice that their conduct violated the law. While the Supreme Court and the Fourth Circuit have held that prison officials may not retaliate against prisoners who engage in affirmative conduct protected by the First Amendment, such as filing grievances or lawsuits, those Courts have not clearly established the right asserted by Plaintiff here and *Burns* is not precedential authority that this Court must follow.

Accordingly, even if this Court were to find that Dixon and Young's alleged threats to place him in segregation for two years because he would not act as an informant for them rises to the level of a First Amendment violation, the undersigned proposes that the presiding District Judge **FIND** that Defendants are entitled to qualified immunity on this claim because the right asserted by Plaintiff was not clearly established by the Supreme Court or the Fourth Circuit at the time of the alleged conduct. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment claims.

### E.    Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims.

As noted previously, Plaintiff's sanction for the disciplinary violation was the loss of certain privileges and placement in punitive segregation for 60 days. Among his other claims, Plaintiff asserts that the conditions of confinement in segregation violated his Eighth Amendment right against cruel and unusual punishment. Specially, he alleges that his constitutional rights were violated because he: (1) was confined to his cell 23

hours a day; (2) had limitations on showers; (3) was denied contact visits; and (4) was not permitted congregate meals, congregate recreation, or religious, educational, or social programming.  (ECF No. 14 at 3).  He further summarily claims that these conditions result in "physical isolation" that has caused him "physical and psychological harm" to which Defendants have been "deliberately indifferent." (*Id.*)  However, the amended complaint contains no allegations addressing how any of the individual defendants engaged in specific conduct that constituted deliberate indifference to a serious risk of harm to him.

As noted by Defendants' briefs, to state a claim that conditions of confinement violate Eighth Amendment requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991)).  (ECF No. 111 at 14).  Defendants further assert:

> To demonstrate that the conditions deprived Plaintiff of a basic human need, he must develop evidence that the Defendants failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).  Plaintiff does not assert that he was denied "adequate food, clothing, shelter, and medical care," only that he was confined to his cell and his access to outside recreation was limited.

(*Id.* at 14-15).  They further contend that "[d]isciplinary measures are permissible, and are not unconstitutional 'punishment' under *Bell* [*v. Wolfish*, 441 U.S. 520 (1979)], if they are intended to advance—and are reasonably related to—'the effective management of the

20

detention facility.'"  *See Williamson v. Stirling*, 912 F.3d 154, 175 (4th Cir. 2018).[5]  (*Id.* at 15).

Defendants also maintain that the second, subjective prong of "deliberate indifference" requires evidence that a defendant had "actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk."  *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004).  (*Id.*)  They also assert that Plaintiff must demonstrate that he suffered a serious or significant physical or mental injury because of the challenged condition.  *See Strickler*, 989 F.2d at 1380-81.  (*Id.*)  Defendants' briefs then switch gears and assert that Plaintiff's conditions of confinement do not constitute an atypical and significant hardship giving rise to a liberty interest protected by due process guarantees under the *Sandin* standard discussed above in section C, at page 11.  (*Id.* at 16-17).  Their brief asserts:

> Plaintiff's claim fails because he has not met his burden to prove that his placement in segregation created an atypical and significant hardship in comparison to ordinary incidents of prison life at MOCC.  Evidence to meet this legal standard is required to avoid judgment on this claim for the Defendants.  *See Petway v. Lappin*, 2008 U.S. Dist. LEXIS 17061, 2008 WL 629998 (N.D.W. Va. Mar. 5, 2008) (finding that plaintiff's due process complaints fail "because the inmate had no protected liberty interest in avoiding segregated confinement").

(*Id.* at 17).

Meanwhile, Plaintiff contends that he has "provided clear and concise documentation of medical issues that have arisen as a direct and composite result of the <u>current</u> conditions of confinement in the segregated housing unit of Quilliams II."  (ECF No. 128 at 5) (emphasis added).  His response further states:

---

[5]  The undersigned notes that *Bell* and *Williamson* were cases dealing with alleged punishment of pre-trial detainees, which are addressed under the Fourteenth, nor the Eighth, Amendment.

> Plaintiff has documentation from the mental health department of increased issues that have to be dealt with through the mental health department.  None of these issues that Plaintiff has had to deal with were evident until **after** Plaintiff was housed in the segregated housing unit of Quilliams II.

(*Id.*) (emphasis in original).  Relying on references to prior judicial decisions, Plaintiff further contends that the conditions about which he complains have been evident for years.  (*Id.*)  His response further asserts:

> Plaintiff is kept in a concrete box for twenty-three to twenty-four (23-24) hours a day with little to no movement that would even come close to physical exercise.  Plaintiff is physically handled each and every time he exits his cell.  Plaintiff has to execute a series of physically humiliating commands while completely nude in order to exit his cell, and prior to returning to his cell should he decide to stand in a steel cage in the filthy indoor recreation area. * * * Being forced to undergo and endure the myriad of inhumane treatment stemming from a disciplinary violation that Plaintiff was not even a part of is nothing short of a "'dramatic departure from the basic conditions of his sentence' in that it imposed an 'atypical and significant hardship on the inmate in relation to the ordinary instances of prison life.'"

(*Id.* at 5-6).  Therefore, Plaintiff contends that the complained of conditions violate both his Eighth and Fourteenth Amendment rights.[6]

Plaintiff contends that his conditions of confinement in segregation at MOCC are identical to those addressed in *Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019).  (ECF No. 128 at 13-14).  In *Porter*, the Fourth Circuit found that there is an "extensive - and growing - body of literature" addressing the "serious psychological and emotional harm caused by segregated or solitary confinement under conditions materially indistinguishable from those that existed on Virginia's death row."  923 F.3d at 356.  "Based upon this extensive

---

[6] As noted above, in light of the prior rulings in this matter, these claims are limited to the 60-day time period Plaintiff spent in punitive segregation.  To the extent that Plaintiff has continued to be subjected to these or other conditions of segregated confinement, any such claims concerning those conditions are not presently before this Court.

body of literature, scholars have concluded that 'solitary confinement has potentially serious psychiatric risks." *Id.*

Thus, the *Porter* Court found that conditions of confinement on Virginia's death row segregation unit(s), which are substantially similar to those complained of by Plaintiff (between 23 and 24 hours a day "alone, in a small . . . cell" with "no access to congregate religious, educational, or social programming,") "pose a 'substantial risk' of serious psychological and emotional harm" sufficient to establish the objective prong of an Eighth Amendment violation. *Id.* at 357, 360-61.  In doing so, the Court rejected reliance on significantly outdated authority in its prior decisions in *Sweet v. South Carolina Dep't of Corr.*, 529 F.2d 854 (4th Cir. 1975) (en banc), and *Mickle v. Moore*, 174 F.3d 464 (4th Cir. 1999), which found no Eighth Amendment violation arising from "squarely analogous" conditions of segregated confinement.  The Court found that those decisions "lacked the benefit of the recent academic literature . . . concerning the harmful psychological and emotional effects of prolonged solitary confinement." *Id.* at 358-59.[7]

With respect to the subjective prong of the Eighth Amendment, the *Porter* Court noted that:

> A plaintiff may satisfy this standard by "prov[ing] by circumstantial evidence that a risk was so obvious that it had to have been known." *Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015).  Put differently, "[a]n obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011). * * * Additionally, the extensive scholarly literature describing and quantifying the adverse mental health effects of prolonged solitary confinement that has emerged in recent years provides circumstantial evidence that the risk of such harm "was so obvious that it had to have been known." *Makdessi*, 789 F.3d at 136.  As the district

---

[7] The *Porter* Court further noted that substantially similar conditions of confinement in Ohio's supermax prison had been found by the Supreme Court to be such a "highly restrictive form of solitary confinement" so as to give rise to a liberty interest to be free therefrom under the Fourteenth Amendment Due Process Clause.  *Id.* at 359-60 (citing *Wilkinson v. Austin*, 545 U.S. 209 (2005)).

> court correctly pointed out, "[g]iven [State D]efendants' status as corrections professionals, it would defy logic to suggest that they were unaware of the potential harm that the lack of human interaction on death row could cause." *Porter*, 290 F.Supp.3d at 532.

923 F.3d at 361.

The Court further noted that, although the role thereof in Eighth Amendment analysis is still somewhat "unsettled," the penological justification supporting a challenged condition is relevant in a conditions of confinement case. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see also Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990) ("Prison conditions are unconstitutional if they constitute an 'unnecessary and wanton' infliction of pain and are 'totally without penological justification.'"); *Grenning v. Miller-Stout*, 739 F.3d 1235, 1240 (9th Cir. 2014) (stating that "[t]he precise role of legitimate penological interests is not entirely clear in the context of an Eighth Amendment challenge to conditions of confinement," but noting that "[t]he existence of a legitimate penological justification has, however, been used in considering whether adverse treatment is sufficiently gratuitous to constitute punishment for Eighth Amendment purposes"). *Id.* at 362. Thus, in *Porter*, the Court further found that "a legitimate penological justification can support prolonged detention of an inmate in segregated or solitary confinement[.]" *Id.* at 362-63.

More recently, in *Thorpe v. Clarke*, the Fourth Circuit clarified that "it has long been established that 'prison official[s] may be held liable for deliberate indifference to a prisoner's Eighth Amendment right to protection against [inhumane conditions] while in custody if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" 37 F.4th 926, 935 (4th Cir. 2022) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011)). Coupled with *Porter*'s

findings, it was clearly established at the time of Plaintiff's placement in punitive segregation in October of 2019, that solitary confinement under conditions like those experienced by Plaintiff poses a substantial risk of serious harm and that such risk was thereafter obvious to prison officials.  Moreover, the obviousness of such risk serves as circumstantial evidence that may be sufficient to prove the knowledge requirement for an Eighth Amendment violation.  37 F.4th at 936-37.  Given these parameters, this Court must determine whether there is sufficient evidence to demonstrate that Defendants herein violated Plaintiff's Eighth Amendment rights by placing him in punitive segregation for a period of 60 days where he was exposed to a "substantial risk of harm" from his conditions of confinement and being deliberately indifferent to that risk.[8]

Plaintiff's amended complaint (ECF No. 14) and declarations (ECF Nos. 61 and 128, Ex. 27 [ECF No. 128-4 at 6-9]) discuss in detail the conditions of confinement to which he has been exposed in the segregation unit at MOCC.  Plaintiff avers that he has been housed in a tiny cell with a solid steel door and a small window for 24 hours a day, unless it is a recreation or shower day, in which case he may get out of his cell for up to one hour.  He further contends that he has only been permitted to shower three times a week and has been forced to have "recreation" in a small, enclosed cage in an indoor room. He further asserts that, in order to leave his cell, he has had to undergo "highly invasive" strip searches and then be escorted by correctional staff in shackles and handcuffs.

Plaintiff further attests that he has been required to eat his meals alone, in his cell, that "any visitation opportunities are conducted through glass walls," and "almost all human contact is prohibited."  (ECF No. 61 at 2).  His declarations further assert that,

---

[8]  Again, although Plaintiff's filings related to this motion also address his continued exposure to such conditions through his alleged indefinite placement in administrative segregation, those claims and facts related thereto are not presently before this Court.

while in segregation, he has been "unable to participate in rehabilitation programs," which he claims will cause him to serve more time before he can "get parol[e]." (*Id.*) He further contends that, as a result of these conditions, he has suffered a physical injury to his leg and other physical and psychological harm due to being isolated and having no exercise opportunities. (ECF No. 61 at 3; ECF No. 128, Ex. 27 [128-4 at 6-9]).

Plaintiff has also offered an MRI report of his left femur (ECF No. 128, Ex. 7 [ECF No. 128-1 at 15]) and one page of mental health records suggesting that he has various mental health issues, which he claims have only originated from his time in segregation (ECF No. 128, Ex. 35 [ECF No. 128-6 at 1-2]). However, the undersigned notes that these records significantly post-date the time period in which Plaintiff was in punitive segregation and appear to be of little utility without additional explanation and expert opinion, which have not been offered by Plaintiff.

Nonetheless, based upon this evidence, as well as the holdings in *Porter* and *Thorpe*, and the scholarly and empirical evidence addressed therein, along with several other articles offered by Plaintiff with his response to Defendants' motion for summary judgment concerning the effects of isolated confinement, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has met the first prong of the Eighth Amendment standard by demonstrating that exposure to the conditions of confinement complained of by Plaintiff, even over a relatively short period of time such as his 60-day punitive sanction, poses an objective risk of serious harm to inmates like Plaintiff.

Turing to the subjective prong, however, even if the Court draws an inference in Plaintiff's favor stemming from the circumstantial evidence of the obvious risk of harm presented by prolonged isolation, Plaintiff has failed to offer any specific evidence demonstrating that each of the named Defendants engaged in conduct that constituted

26

deliberate indifference to a substantial risk of harm to Plaintiff. There is no evidence of record addressing any specific conduct engaged in by Defendants with respect to his conditions of confinement in punitive segregation. At best, Plaintiff's declaration submitted with his response to Defendants' motion for summary judgment states as follows:

> Plaintiff has submitted grievances concerning the conditions of confinement and NEVER received any form of relief from the Administration. It is nothing short of callous, indifferent, and blatant dereliction of duty on the part of "seasoned" and highly experienced senior officials within the West Virginia Department of Corrections and Rehabilitation to continually ignore and deny cruel and unusual treatment of segregated inmates. Surely these professionals don't honestly believe that an indoor "dog kennel" is appropriate for a human being to exercise in. (That is if these so-called professionals even consider inmates to be human beings.) * * * The most troubling thing is the fact that Mount Olive Correctional Complex and Jail Officials are so deliberately indifferent to Plaintiff's mental, emotional, and physical health.

(ECF No. 128, Ex. 27 [ECF No. 128-4 at 8-9]). These are nothing more than conclusory statements which are devoid of any specific factual support that would demonstrate the subjective conduct of these individual defendants and would be sufficient to give rise to a material dispute of fact to overcome summary judgment. Moreover, because Plaintiff was found guilty of the subject disciplinary violation and sanctioned with 60 days of punitive segregation, in accordance with all process due to him, it cannot be said that his segregated confinement for that time period was totally without penological justification or without due process.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to sufficiently establish a genuine issue of material fact concerning the deliberate indifference of Defendants to a serious risk of harm to Plaintiff stemming from prolonged isolation and related conditions of confinement during his 60-day period of

punitive segregation.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendants are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claims against them.

Likewise, with respect to the 60-day period of punitive segregation, the undersigned again proposes that the presiding District Judge **FIND** that, even presuming that the conditions of segregated confinement at MOCC constitute an atypical and significant hardship as compared to normal prison life, Plaintiff has not demonstrated that such placement was made without due process of law.  Accordingly, as addressed previously in section C above, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment claim in relation to his term of punitive segregation.[9]

### F.     Defendants Ames and Jividen are entitled to judgment as a matter of law on Plaintiff's supervisory liability claims.

Outside of their role in affirming the disciplinary sanctions imposed by Wilson, which has already been addressed in section C concerning Plaintiff's due process claims, Plaintiff's claims against Defendants Ames and Jividen sound, if at all, only in a theory of supervisory liability.  In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates'

---

[9]  The undersigned has made this additional finding here in light of Defendants' due process arguments made in the conjunction with their analysis of the Eighth Amendment claims in their briefs.

misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

Defendants assert that Plaintiff has failed to demonstrate conduct by Ames and Jividen that would satisfy this standard.  Their memorandum of law states:

> Importantly, to defeat Defendants' qualified immunity on a claim of supervisory liability, the Plaintiff must show that it was clearly established at the time of the subordinate's conduct that the supervisor could be held liable under § 1983 for constitutional violations committed by the subordinate; that the supervisor knew that the actions/conduct was unconstitutional; and that a reasonable person in the supervisor's position would have known that his actions were unlawful. *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994).  [Footnote omitted] * * * To find Defendants Ames and Jividen liable as supervisors, Plaintiff must present evidence that they encouraged or directly participated in the specific misconduct at issue.  No misconduct by their subordinates is alleged. Again, the only alleged "misconduct" (relevant to the pending Motion) are the findings of the disciplinary hearing. Further, a "mere failure to act will not suffice to establish supervisory liability." *Id.*, citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).  The nature of the supervisory role does not affect the outcome, as long as the supervisor has not participated in the specific conduct or urged the behavior.  The clear rule is that denial of a grievance or disciplinary appeal, is insufficient to establish liability under § 1983." *See Johnson v. Aramark*, 482 Fed. Appx. 992, 993 (6th Cir. Ky. 2012).  Allegations that a supervisor took no action, failed to supervise, control or train the offending employee does not give rise to a § 1983 claim. Instead, the supervisor has to directly participate in or otherwise encourage the specific action or incident of wrongdoing.  A plaintiff and/or prisoner must show that the supervisor discreetly sanctioned, approved, or knowingly consented to the unconstitutional conduct of the employee to show a claim under § 1983, along with an underlying Constitutional violation.  Also, absent a showing of an underlying constitutional violation (which Plaintiff cannot prove in this case), there is no supervisory liability.  Importantly, the only allegation specific to these Defendants is that they denied Plaintiff's appeal.

(ECF No. 111 at 18-19).  Plaintiff's response does not specifically address or rebut these assertions concerning any supervisory liability on the part of Ames and Jividen.  In fact,

it makes only sweeping statements about "Defendants" generally, without any specific reference whatsoever to Ames or Jividen.  (ECF No. 128).

As noted by Defendants' briefs, a valid claim of supervisory liability cannot be based upon *respondeat superior*.  Instead, Plaintiff must demonstrate that an individual supervisor had actual knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of a constitutional injury to Plaintiff and was deliberately indifferent or tacitly authorized the subordinate's misconduct, which directly caused the constitutional injuries claimed by the plaintiff. *Slakan*, 737 F.2d at 372; *Shaw,* 13 F.3d at 799; *Deakins v. Pack*, 957 F. Supp.2d 703, 761 (S.D.W. Va. 2013).  As addressed above, Plaintiff has failed to present any evidence demonstrating deliberate indifference by Ames and Jividen to a pervasive or unreasonable risk of harm to Plaintiff herein.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Ames and Jividen are entitled to qualified immunity and judgment as a matter of law on any and all of Plaintiff's claims against them.

## V.    RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendants' Motion for Summary Judgment (ECF No. 110) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation

within which to file with the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and to transmit a copy to counsel of record.

August 17, 2022

Dwane L. Tinsley
United States Magistrate Judge

31